UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RODNEY D. MILLER                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:15-CV-294-DW

CAROLYN W. COLVIN, Acting Commissioner of Social Security          DEFENDANT

## MEMORANDUM OPINION

Plaintiff Rodney D. Miller has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain

judicial review of a final decision of the Commissioner of Social Security that denied his

applications for disability insurance benefits (DIB). Miller applied for DIB on Feb. 10, 2012,

alleging that he was disabled as of Dec. 1, 2011, due to post-traumatic stress disorder (PTSD),

depression, osteoarthritis, left shoulder surgery and coronary artery disease (Tr. 71, 126-130).

The Commissioner denied Miller's claims on initial consideration (Tr. 71-86) and on

reconsideration (Tr. 87-102). Miller requested a hearing before an Administrative Law Judge

(ALJ) (Tr. 115-116).

ALJ John R. Price conducted a hearing in Louisville, Kentucky, on Oct. 10, 2013 (Tr. 39-

70). Miller attended with his attorney, Jana Hewitt (Tr. 39). Miller and vocational expert (VE)

Tina Stambaugh testified at the hearing (Tr. 42-64, 65-70). Following the conclusion of the

hearing, ALJ Price entered a hearing decision on Nov. 20, 2013, that found Miller is not disabled

for the purposes of the Social Security Act (Tr. 7-26).

In his adverse decision, ALJ Price made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act
        through June 30, 2017.

2.      The claimant has not engaged in substantial gainful activity since Dec. 1, 2011,
        the alleged onset date (20 C.F.R. 404.1571, *et seq.*).

3.      The claimant has the following severe impairments: osteoarthritis, history of left shoulder surgery, coronary artery disease, depression and PTSD (20 C.F.R. 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except he would require the option to change positions between sitting and standing at 30 minute intervals, taking a minute or two to change positions, and could: frequently, but not constantly push and pull with the lower extremities; occasionally climb ramps and stairs; occasionally kneel, crouch bend and stoop; never climb ladders, ropes or scaffolds; and never crawl.  He should avoid concentrated exposure to cold temperature extremes and vibrations, and could perform simple, routine, one-to-two step job tasks in a low stress work environment with no fast-paced production rate demands or quotas, no interaction with the general public, occasional but superficial interaction with co-workers and supervisors, and no close tandem work.

6.      The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.      The claimant was born on Aug. 10, 1966, and was 45-years-old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.      The claimant has at least a high-school education and is able to communicate in English (20 C.F.R. 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from Dec. 1, 2011, through the date of this decision (20 C.F.R. 404.1520(g)).

Miller sought review of the hearing decision by the Appeals Council (Tr. 4-6). The Appeals Council denied his request for review, finding no reason under the Rules to review ALJ Price's decision (Tr. 1-3). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See, 20 CFR §§ 404.1505, 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

3

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See*, *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work.  20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989).  A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3)  The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience.  See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

4

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The

statute, and case law that interprets it, require a reviewing court to affirm the findings of the

Commissioner if they are supported by substantial evidence and the Commissioner has employed

the appropriate legal standard.  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528

(6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination

that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.).  Substantial evidence is defined by the

Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  *See also, Lashley v.*

*Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*).  It is more than a mere

scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but

must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury.

*Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record

taken as a whole, not simply some evidence, but rather the entirety of the record to include those

portions that detract from its weight.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984);

*Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000).  So long as the decision of the

Commissioner is supported by substantial evidence, it must be upheld by the federal court even if

the record might support a contrary conclusion.  *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th

Cir. 1989).  The substantial evidence standard "presupposes that there is a zone of choice within

which decision makers can go either way, without interference from the courts."  *Mullen v.*

*Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

5

**Issues for Consideration.**

*VA Service-Connected Disability Rating.*

Miller raises three issues for the Court to consider.  The first one centers upon his separate disability determination by the Veterans Administration.  Miller, an army veteran, was determined by the VA to have a 70% disability rating (Tr. 64, 253, 278, 307).  His service connected disability is based on non-mental conditions of degenerative arthritis (10%), tendon inflammation (10%), sleep apnea syndrome (50%), impairment of the clavicle, and degenerative arthritis of the spine (10%).[1]

ALJ Price in his hearing decision at p. 11 acknowledged that Miller had been evaluated with a service-connected disability, but continued to add that:

> The VA opinion regarding the claimant's service-connected disability is vague and does not appear well supported by the overall record as a whole.  As such, I assign the meager evidence of the claimant's service-connected disability no weight, instead finding that the overall evidence of record supports the conclusion herein [that Miller retains the residual functional capacity to perform alternative sedentary work with various exertional and nonexertional limitations].

(Tr. 20).

Miller now argues in his fact and law summary[2] that ALJ Price failed to adequately consider the service-connected disability rating imposed by the VA.  Citing *Stewart v. Heckler,* 730 F.2d 1065, 1068 (6th Cir. 1984), he argues that the ALJ must adequately explain why he

---

[1] No percentage points are assigned to the remaining listed disabilities, which include benign skin neoplasm, hypertensive vascular disease, cardio myopathy, second degree burns, hemorrhoids, residual of foot injury, removal of rib, varicose veins, malaria and flat foot condition. (Tr. 370).

[2] DN 17.

6

afforded no weight to the VA's decision.  Miller insists that the Sixth Circuit requires that such a VA determination at a minimum be assigned "some weight."  *Gibson v. Astrue*, 2010 WL 148807 at *5 (E.D. Ky2010)(ALJ failed to address VA disability rating in his denial decision contrary to SSR 06-3p which requires such disability determinations to be considered)(collecting cases); *Briskey v. Astrue*, 2011 WL 672553 at *4 (N.D. Ohio 2011)(noting that while the Sixth Circuit has not yet announced a definitive view on the issue, several courts within the circuit have followed the trend that an ALJ must assign some weight to the VA's decision and articulate his or her reasons for finding such); *Rothgeb v. Astrue*, 626 F.Supp.2d 797, 810 (S.D. Ohio 2009)(ALJ erred in failing to consider the VA determination to grant plaintiff total disability).

Miller continues that while it is entirely permissible that an ALJ might not afford a VA service-connected disability rating "great weight," the ALJ nonetheless must adequately explain valid reasons why the VA's disability determination is not entitled to substantial weight.  *King v. Comm'r of Soc. Sec.*, 779 F.Supp.2d 721, 726 (E.D.11 Mich. 2011) (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)).  Miller reasons that Social Security Ruling (SSR) 06-03p equally supports his contention that ALJ Price erred when he failed to properly evaluate the VA's disability determination or to provide any meaningful grounds on which he summarily rejected it thereby preventing meaningful appellate review.

The Court disagrees.  The Sixth Circuit "has not set forth a specific standard regarding the weight the Commissioner should afford a 100% disability determination by the VA." *LaRiccia v. Comm'r of Soc. Sec.*, 2013 WL 6570777 at *9 (6th Cir. Dec. 13, 2013) (citing *Stewart v. Heckler*, 730 F.2d 1065 (6th Cir. 1984)). *See also Ritchie v. Comm'r of Soc. Sec.*, 540 Fed.Appx. 508, 510-11 (6th Cir. 2013) (same).  The regulations provide at 20 C.F.R. §404.1504 that a determination made by another agency that a claimant is disabled is not binding on the

7

Commissioner.  The Commissioner, however, certainly may find the determination of the VA, or any other governmental agency for that matter, to be relevant depending on the standards employed to assess disability.  SSR 06-03p, 2006 WL 2329939 at *7 (Aug. 9, 2006).

A service-connected disability determination by the VA is considered at most to be "one piece of evidence" that is not determinative of the outcome of an application for Social Security disability benefits.  *Deloge v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 517, 518-19 (6th Cir. 2013). Because the disability determination of the VA is at most "simply another fact that the ALJ must take into account when considering all the evidence," *Tiffany v. Colvin,* No. 3:13-CV-839-H, 2014 WL 1922929 (W.D. Ky. May 14, 2014)(" All federal circuit courts require, at a minimum, that an ALJ give consideration to the disability determination of another agency)(citing Carolyn A. Kubitschek, Social Security Disability: Law and Procedure in the Federal Court, § 2:43 (1994 Supp.2007), the ALJ is not required to discuss the VA disability determination with any specific level of detail other than to explain the consideration given to [the decision] in the notice of decision for hearing cases…."  SSR 06-03p 2006 WL 2329939 at *18.  So long as the reviewing court is not left to sheer speculation in its determination of the ALJ's rationale for rejecting the VA disability rating, the hearing decision will not be set aside on this basis.  *King v. Comm'r of Soc. Sec.*, 779 F.Supp.2d 721, 726 (E.D. Mich. 2011) (remanding an adverse disability determination by the ALJ due to his failure to articulate any reasons for rejecting the VA's disability determination).

Here, a review of the hearing decision entered by ALJ Price reveals clearly why he elected not to afford any weight to the VA's disability determination.  The service-connected disability determination was unrelated to Miller's PTSD or any other mental condition (Tr. 64,

8

253, 278, 307).[3]  Instead it rested entirely on Miller's physical condition.  The problem for Miller, however, was that review of his treatment records failed to produce evidence of severe limitations due to Miller's physical condition, and references to the VA disability rating are both sparse and devoid of any substantive explanation.  Finally, ALJ Price discussed the physical findings in depth in his adverse hearing decision.

The ALJ in his decision at p. 8 noted that physical examination of the claimant had revealed only mild coronary artery disease with a normal stress test (Tr. 220-233, 291-433).  In fact, Miller had been advised to do physical activity for at least 30 minutes a day each day, and treatment notes reflected that he was beginning to work out more (Tr. 17, 220-233, 291-433).  Physical examination also revealed no loss of motor strength in the left shoulder, although Miller did exhibit a restricted range of motion (Tr. 234-241).

A consultative physical examination performed by Dr. William Waltrip in May of 2012, revealed that Miller walked with a normal gait, had no loss of motor strength or sensation, could heel-toe walk and exhibited only generalized arthritis (Tr. 236-238).  Dr. Waltrip concluded that while his arthritis involving his knees did limit Miller's ability to walk and stand for protracted periods, he remained able to lift moderately heavy objects without limitation, ambulated without an assistive device, had no motor dysfunction, sensory loss or reflex abnormalities, had good grip strength and exhibited only a limited range of motion in his left shoulder (Tr. 238).

ALJ Price in his hearing decision carefully set forth in detail the VA treatment history for Miller's heart condition, noting that treatment records revealed only "very mild coronary artery disease" and that Miller otherwise had an "unremarkable cardiac workup."  (Tr. 17).  Further,

---

[3] The designation "(non MH)" indicated non-mental health (Tr. 253, 278, 307).  No mental health conditions are listed in the rated disabilities list for Miller's service-connected disability rating (Tr. 307).

ALJ Price correctly noted that repeated physical examinations from 2011 through 2013, had failed to reveal any motor dysfunction, sensory loss, reflex abnormalities, neurological deficits, or other severe limitations that would preclude even the alternative sedentary work identified by the ALJ at p. 13 of his hearing decision based on the testimony of the Tina Stambaugh, V.E. -- machine tender, general clerical worker and hand packer (Tr. 22, 67-69).

In short, when the hearing decision of ALJ Price is read in its entirety, it becomes clear that he carefully considered the entire medical record of the claimant and determined that Miller's treatment history did not support the 70% service-connected disability rating of the VA when the treatment records were carefully examined. Thus, the Court is not faced with a situation where it is unable to determine whether substantial evidence supports the decision of ALJ Price in this respect. It does and therefore the Court rejects Miller's initial argument. ALJ Price did not simply ignore the 70% disability determination of the VA, as the ALJs did in *Gibson, Briskey* and *Rothgeb*. The hearing decision, when read as a whole, adequately sets forth why the ALJ chose to afford no weight to that determination.

*Residual Functional Capacity Determination.*

Miller argues next that the residual functional capacity determination of ALJ Price is legally insufficient. ALJ Price in finding of fact no. 5 determined that Miller despite the limitations imposed by his severe impairments remained able to perform a limited range of alternative sedentary work with various exertional and nonexertional restrictions (Tr. 15-21). In particular, ALJ Price found that Miller despite his depression and PTSD remained able to perform sedentary work that involved "simple, routine one-to-two step job tasks in a low stress environment with no fast paced production rate demands or quotas, no interaction with the

10

general public, occasional but superficial interaction with co-workers and supervisors and no close tandem work."  (Tr. 15).  Based on these restrictions, ALJ Price ultimately determined in finding of fact no. 10 that Miller was capable of performing alternative sedentary work in jobs such as machine tender, general clerical worker and hand packer (Tr. 22-23).

Miller now maintains that the ALJ did not appropriately take into account the limitations resulting from his PTSD and depression and their effect on his ability to function socially and to conform his behavior to socially acceptable standards.  Miller contends in this regard that the limitations imposed by ALJ Price are "not even consistent with his own hearing findings," much less the underlying evidence of record, which Miller insists shows that he is far more limited in his ability to interact with co-workers than the decision of the ALJ suggests.  Pointing to SSR 85-16, Miller argues that, given his severe mental impairments, the ALJ was obligated to produce an accurate and detailed mental RFC that assessed his capacity to perform and sustain mental activities that are critical to work performance.  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004).

Miller contends that ALJ Price did not translate the B criterial finding of fact no. 4, in which the ALJ determined that Miller has marked difficulties in social functioning, into a "detailed, function-by-function analysis required for a proper residual functional capacity determination."[4]  More specifically, he argues that the RFC finding that limits him to simple, routine one-to-two steps in a low stress environment with no interaction with the general public and superficial interaction with co-workers and supervisors fails to take into account all of the mental work-related limitations documented in his medical records.  Miller insists that a more detailed examination of the work-related restrictions imposed by his depression and PTSD was

---

[4] DN 17, p. 7.

required given that the B criteria are not a residual functional capacity assessment used at steps 4 and 5, but rather were limited simply to the determination of whether Miller's nonexertional impairments were so severe as to satisfy the listing criteria of listing 12.04 and 12.06 for affective disorders and anxiety-related disorders, respectively.

Miller argues that the B criteria finding of the ALJ-- that Miller has marked limitations in social functioning-- indicates generally that he is unable to maintain relationships and has frequent serious disruptions in relationships due to withdrawal, conflicts, inappropriate and aggressive behaviors.[5] *Social Security Administration, Proposed Rules, Mental Disorders in Adults*, 56 Fed. Reg. 33130, 33132 (July 18, 1991).  Miller then proceeds to review various portions of the record that allegedly confirm his view that his marked limitations in social functioning were not adequately taken into consideration in the RFC determination of finding of fact no. 5.

For example, Miller points to the determination of the agency's examining expert, Dr. Lynch, who performed a consultative psychological examination of Miller in Louisville, Kentucky, on June 11, 2012 (Tr. 243-246).  Dr. Lynch determined that Miller isolates himself, engages in avoidance, has reported hypervigilance and frequent irritability so much so that his capacity to respond appropriately to supervision, co-workers and work pressures would be moderately to markedly limited in Dr. Lynch's view (Tr. 346).  Miller's reported symptoms during VA treatment likewise in his view confirm the extraordinary severity of his social restrictions.

He points to his PTSD score of 79 out of 85 indicating extreme symptoms of hypervigilance and anxiety upon his return from Afghanistan (Tr. 406-07) as well as reported

---

[5] DN 17,  p.  9.

hallucinations and flashbacks (Tr. 401).  These symptoms according to Miller are confirmed by

his chronic PTSD diagnosis by Dr. Jacoby, along with a diagnosis of adjustment disorder, that

resulted in his treatment with Prozac (Tr. 383).  Miller also related to Dr. Jacoby his avoidance

behaviors, intrusive memories, hypervigilance, anger outbursts and exaggerated startle response

(Tr. 381).

Dr. Jacoby's findings, according to Miller, were confirmed later upon neuropsychological

evaluation by Dr. Bennet, who noted that while Miller might over endorse his symptoms and

exaggerate, Miller's "profile pattern does suggest marked distress."  (Tr. 257-59).  Accordingly,

Dr. Bennet interpreted this over endorsement to be more of a "cry for help."  (Tr. 259).  Miller

notes that Dr. Bennet found him to be socially isolated with limited social skills and thought

processes that were consistent with antisocial character features (Tr. 260).  Likewise, Dr. Bennet

reported the presence of rapid mood swings and potential verbal aggression with relatively low

levels of provocation along with a risk for aggressive behaviors (Tr. 261).

Miller in his fact and law summary relates two separate instances that he reported, which

involved an instance of severe disassociation and a potential conflict with shoppers at Wal-Mart

(Tr. 268-69, 269-70).  While several treatment notes indicated some improvement, Miller notes

that even as late as July of 2012, he continued to isolate himself, disliked going out in public, and

remained at home (Tr. 249).

Miller also points to his failed attempt to work as an ROTC instructor - - an effort that

lasted less than a single day after he became confrontational with other instructors and therefore

was deemed hostile and insubordinate (Tr. 43-45).  Miller reported during one VA counseling

session a confrontation with his girlfriend, who later ended her relationship with him (Tr. 336).

As of January, 2013 Miller indicated that he only was leaving his home to attend medical

13

appointments.  He was noted on that occasion to remain hypervigilant and paranoid (Tr. 302).

Miller reported to Dr. Jacoby in March of 2013, that he spent most of his time lying in bed only

leaving his home to play with his dog.  Additional PTSD testing confirmed a 64 out of 85 score

with severe symptoms of super alertness, avoidance and physical reaction to triggered memories

(Tr. 293-294).  Even as of that date, Miller reported that he rarely left his home and was still

continually checking the doors and windows (Tr. 292).

Miller argues that the RFC determination of ALJ Price does not take into account or

address in any fashion this detailed information of record that confirms the severity of his

marked social functioning limitations in social and public situations.  Accordingly, he concludes

that the RFC determination in finding of fact no. 5 does not include all of the nonexertional

limits on his work-related activities arising from his marked impairments in social functioning.

Accordingly, Miller asks that his case be remanded to the Commissioner given the inadequacy of

the RFC findings of his nonexertional marked impairment in social functioning, and its effect on

his ability to perform work related activities.  This error was particularly crucial in Miller's view

given the testimony of V.E. Stambaugh who testified that if Miller were unable to sustain

interaction with co-workers and isolated himself even one day a week, he would be precluded

from all substantial gainful activity (Tr. 69).

The Court once again is compelled to disagree with Miller's position on this issue.

Residual functional capacity is defined by regulation as being "the most you can still do despite

your limitations."  20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).  See *Luteyn v. Comm'r of Soc.

Sec.*, 528 F. Supp.2d 739, 750 (W.D. Mich. 2007) ("RFC is the most, not the least, a claimant

can do despite his impairments.").  The Commissioner is required by regulation to assess a

claimant's RFC "based on all the relevant evidence in [the claimant's] … record."  Id.  See

14

*Bingham v. Comm'r*, 186 Fed. Appx. 624, 647-48 (6th Cir. 2006) ("The ALJ is ultimately responsible for determining a claimant's RFC based upon relevant medical and other evidence of record.").

In assessing a claimant's residual functional capacity, the Commissioner will consider all of his or her medically determinable impairments including both severe and non-severe impairments.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).  *See Reynolds v. Comm'r* , 424 Fed. Appx. 411, 417-18 (6th Cir. 2011) ("It is true that an ALJ must determine a claimant's residual functional capacity, considering 'numerous factors' including 'medical evidence, non-medical evidence, and the claimant's credibility.'") (quoting *Coldiron v. Comm'r*, 391 Fed. Appx. 435, 443 (6th Cir. 2010)).  *See also*, SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996).  It is the responsibility of the claimant to provide the evidence that the Commissioner will evaluate in making the RFC finding.  *See* 20 C.F.R. §§404.1512(c), 416.912(c).  The Commissioner also will consider any statements of the claimant provided by medical sources about what he or she remains able to do, as well as any descriptions or observations of the claimant's limitations caused by his or her impairments that are provided by the claimant, the claimant's family, friends or other persons.  20 C.F.R. §§405.1545(a)(3), 416.945(a)(3).

A finding of residual functional capacity is used at step 4 of the sequential evaluation process first to determine whether the claimant remains capable of performing his or her past relevant work.  See 20 C.F.R. §§404.1520(f), 404.1560(b), 416.920(f) and 416.960(b).  If the Commissioner determines that a claimant is not able to perform his or her past relevant work, or does not have past relevant work, then the RFC determination is used at step 5 of the sequential evaluation process to determine whether the claimant can adjust to any other work that exists in the national economy.  See 20 C.F.R. §404.1520(g), 404.1566, 416.920(g) and 416.966.  In this

15

respect, the RFC assessment is used along with information concerning the claimant's vocational background in making the disability determination.  Id.

Review of the hearing decision persuades the Court that ALJ Price did not err in his consideration of Miller's nonexertional limitations due to his marked limitations in social functioning.  To the contrary, the ALJ carefully considered all of the evidence of record in his decision.  This evidence revealed that Miller was determined upon examination by Dr. Lynch to have only moderate to marked limitations in his capacity to respond appropriately to supervision, co-workers and work pressures in a work setting (Tr. 246).  Both of the state agency psychological consultants concluded that Miller was at most only moderately limited in his social functioning (Tr. 76-77, 92-93).  While ALJ Price did indeed find Miller to have marked difficulty with his social functioning, the ALJ also correctly noted that Miller retained the ability to live with his nephew, interact appropriately with his neighbors, talk to friends on the phone on a monthly basis, maintain a long-term relationship with his girlfriend, use the internet and travel out of state (Tr. 14, 167-79, 242-46, 248-83, 291-434).  ALJ Price also correctly noted that Miller reported he is able to shop at local stores so long as large numbers of persons are not present (Id.).  Miller specifically reported shopping at Lowe's and going to a flea market.

ALJ Price accurately found that Miller's VA treatment notes repeatedly reflect that Miller was found to be cooperative, with good eye contact and responsive facial expressions. (Tr. 248-283, 291-434).  Thus, while Miller may point to other portions of the record in support of his more restrictive interpretation of his ability to function socially, the ALJ's RFC findings in this respect are sufficiently supported by the evidence of record.  The Court cannot say that substantial evidence does not support the ALJ's nonexertional RFC determination despite the

fact that the ALJ properly could have chosen to be more restrictive in his assessment of Miller's nonexertional limitations.

ALJ Price imposed a number of restrictions to take into account Miller's marked restrictions in social functioning, which included no interaction with the general public and only occasional, but superficial, interaction with co-workers and supervisors combined with no close tandem work (Tr. 15).  Such restrictions appear to amply take into account Miller's restrictions in social functioning so that the Court cannot say that substantial evidence does not support the finding of the ALJ in this respect.

*Credibility Determination.*

Miller in his final argument maintains that the credibility determination of the ALJ fails to afford Miller appropriate credit for his lengthy work history.  While Miller acknowledges that credibility determinations are to be accorded deferential treatment, *Felisky v. Bowen*, 35 F.3d 1027, 1040-41 (6th Cir. 1994), he insists that such findings are not "sancrosanct."  In particular, Miller insists that his long-term military service record and work history are both factors that should have been taken into consideration by the ALJ in support of a favorable credibility finding.

A strong work history according to Miller is an appropriate factor to be considered when evaluating credibility under SSR 96-8p as noted by *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980).  Miller protests that ALJ Price did not even make mention of his work history prior to the alleged disability onset date on Dec. 1, 2011.  Miller prior to that time had reported earnings for 104 work quarters between 1986 and 2011 representing 25 consecutive years of work history.  In addition to this exemplary military service, Miller also worked as a civilian defense contractor

17

for Raytheon where he earned a substantial salary (Tr. 133, 266).  Indeed, he attempted to return

to work albeit unsuccessfully as an army ROTC instructor in 2012, but given his severe

nonexertional limitations was unable to succeed in his efforts.  This long and continuous work

history refutes any notion in Miller's view that he could be considered to be a malingerer or

otherwise poorly motivated to work.  In other words, Miller refutes the notion that he traded a

lucrative career as a military professional or civilian contractor for a career of receiving disability

benefits.  *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983); *Taybron v. Harris*, 667 F.2d

412 (3rd Cir. 1981).

     An administrative law judge properly may consider the credibility of a claimant when

evaluating the claimant's subjective complaints, and the federal courts will accord "great

deference to that credibility determination."  *Warner v. Comm'r*, 375 F.3d 387, 392 (6th Cir.

2004).  The findings of the ALJ in this regard are repeatedly held in the Sixth Circuit to be

accorded great weight, and judicial deference will be given to the ability of the ALJ to observe

the demeanor and credibility of the witnesses.  *Walters v. Comm'r*, 127 F.2d 525, 531 (6th Cir.

1997) (citing *Villarreal v. Sec'y*, 818 F.2d 461, 463 (6th Cir. 1987)).  Yet, the ALJ is not

accorded absolute deference.  His or her assessment of a claimant's credibility must be supported

by substantial evidence.  *Beavers v. Sec'y,* 577 F.2d 383, 386-87 (6th Cir. 1978).

     When the ALJ "finds contradictions among the medical reports, claimant's testimony and

other evidence," the ALJ may properly discount the credibility of the claimant.  *Winning v.

Comm'r*, 661 F. Supp.2d 807, 822 (N.D. Ohio 2009) (citing *Walters,* 127 F.3d 525, 531 (6th Cir.

1997)).  The ALJ, however, is not permitted to render a credibility determination based solely

upon a hunch, or "intangible or intuitive notion about an individual's credibility."  Id. (citing

Rogers, 486 F.3d at 247) (citing SSR 96-7p)).  Under SSR 96-7p, the ALJ must in the hearing

decision set forth specific reasons for the credibility determination sufficient to make clear to the claimant and subsequent reviewers the weight that the ALJ gave to the claimant's statements and the reasons for such weight. *Winning*, 661 F. Supp.2d at 823. A mere blanket assertion that a claimant is not believable will not be sufficient under SSR 96-7p. *Id*. (citing *Rogers,* 486 F.3d at 248).

An assessment of the claimant's credibility must be based on a consideration of all the evidence of record. It should include consideration of not only the objective medical evidence but the aforementioned factors of: (1) the daily activities of the claimant; (2) the location, duration, frequency, and intensity of the claimant's symptoms including pain; (3) any factors that precipitate or aggravate the symptoms; (4) the dosage, type, effectiveness and side effects of any medication taken to alleviate such symptoms or pain; (5) treatment that the claimant has received for relief of his or her symptoms; (6) any measures other than treatment that the claimant uses to relieve his or her symptoms; and (7) any other factors relating to the functional limitations and restrictions of the claimant due to such symptoms or pain. Id. at 823 n. 14 (citing SSR 96-7p).

Also included among the evidence that the ALJ must consider when making a credibility determination are the medical signs and laboratory findings of record, the diagnosis, prognosis and medical opinions provided by any treating physicians or other medical sources, and any statements or reports from the claimant, physicians or other persons about the claimant's medical history, treatment, response to treatment, prior work record, daily activities and other information related to the symptoms of the claimant and how such symptoms affect his or her ability to work. Id.

When the record establishes consistency between the subjective complaints of the claimant and the other evidence of record, such consistency will tend to support the credibility of

claimant, while in contrast, any inconsistency in this regard will tend to have the opposite effect. *Winning,* 661 F. Supp.2d at 823.  The reviewing court does not make its own credibility determinations.  *Franson v. Comm'r,* 556 F. Supp.2d 716, 726-27 (W.D. Mich. 2008) (citing Walters, 127 F.3d at 528)).  The federal courts will not substitute their own credibility determination for that of the ALJ as the fundamental task of the Commissioner is to "resolve conflicts in the evidence and to decide questions of credibility."  *Rineholt v. Astrue*, 617 F. Supp.2d 733, 742 (E.D. Tenn. 2009) (citing Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994)).  Given the substantial deference accorded the credibility determination of the Commissioner, "'claimants challenging the ALJ's credibility determination face an uphill battle.'"  *Franson*, 556 F. Supp.2d at 726-27 (citing *Daniels v. Comm'r*, 152 Fed. Appx. 485, 488 (6th Cir. 2005)).

Miller has not won this "uphill battle."  *Franson*, 556 F.Supp.2d at 726-27.  First, Miller clearly is incorrect when he observes that the ALJ did not mention his work history prior to his alleged disability onset date.  To the contrary, ALJ Price specifically noted at p. 7 of his hearing decision that Miller testified he was a soldier for 24 years (Tr. 16).  ALJ Price also related Miller's history as a civilian military contract instructor.  To this extent Miller is mistaken in his criticism of ALJ Price's credibility determination.  The ALJ did take into account Miller's work history, but ultimately determined that Miller had overstated his alleged nonexertional limitations due to his severe impairments of PTSD and depression.

Indeed, ALJ Price was not the only individual to conclude that Miller was potentially overstating his limitations in this regard.  Neuropsychological evaluation results obtained by Dr. Jeanne M. Bennet following examination of July 3, 2012, indicated that Miller in his Personality Assessment Inventory test results revealed "that he endorsed items to present an unfavorable

20

impression" that while perhaps a "cry for help" was noted by Dr. Bennet to potentially "over represent the extent and degree of significant test findings…."  (Tr. 259).  Dr. Bennet continued to note that given Miller's tendency to "over endorse items" it was possible that the clinical scales on a broad range of clinical features might "over represent or exaggerate the actual degree of psychopathology."  (Id.)  Further, Dr. Bennet also noted that Miller's responses to the Personality Assessment Inventory indicated that his level of motivation for treatment "is lower than that of individuals who are being seen in treatment."  (Tr. 261).  Thus, psychological testing indicated a tendency by Miller to over represent his symptoms, a conclusion that is directly supportive of ALJ Price's adverse credibility determination.

Further, ALJ Price also appropriately rejected Miller's credibility concerning his physical limitations.  As the Court noted above, Miller was noted to have only very mild coronary artery disease with unremarkable cardiac workups.  While he did have some limitation in his range of left shoulder motion, he otherwise exhibited no sensory loss or loss of muscular strength and was able to grip and perform fine manipulations without limitation.

Following behavioral mental health treatment, Miller was noted to response to medication and reported better sleep along with fewer nightmares and "the ability to venture in public places."  (Tr. 200, 242-246, 248-283, 291-434).  Miller was encouraged to engage in physical activity for 30 minutes every day.  He was able to live with his nephew, take an out of state trip, maintain friendships, interact with his neighbors, maintain a relationship with a girlfriend for several years, and had no legal problems despite his self-reported mistrust of others and a possession of loaded firearms in his home (Tr. 16, 53-54, 57).  Based on the above-cited portions of the record, the Court cannot say that ALJ Price erred in his credibility determination, particularly given the deferential review that we are to accord such determinations.

21

The record adequately supports the ALJ's credibility finding, as well as the adverse determination at step 5 of the sequential evaluation process that Miller remains capable of performing alternative sedentary work with various exertional and nonexertional limitations such as those contained in finding of fact no. 5 .  The adverse decision of the Commissioner is supported by substantial evidence at step 5 given the testimony of V.E. Stambaugh in response to the hypothetical question by ALJ Price that accurately reflected all of Miller's work-related restrictions.  *See, Ealy v. Comm'r*, 594 F.3d 504, 512-13 (6th Cir. 2010) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and mental impairments.") (citing *Varley v Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987)).  Accordingly, for the above reasons the decision of the Commissioner shall be affirmed and the complaint dismissed with prejudice.

Cc:      Counsel of Record